UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM CLYDE HENIX,

             Petitioner,

v.                                                 CASE NO. 13-13861
                                               HONORABLE SEAN F. COX

DEWAYNE BURTON,

             Respondent.

_____/

**OPINION AND ORDER
DENYING THE AMENDED HABEAS CORPUS PETITION
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

     This matter is presently before the Court on petitioner William Clyde Henix' *pro se* amended petition for the writ of habeas corpus. The amended petition challenges Petitioner's plea-based convictions for witness intimidation, Mich. Comp. Laws § 750.122, and assault with a dangerous weapon (felonious assault), Mich. Comp. Laws § 750.82. Petitioner alleges as grounds for relief that (1) his no-contest plea was involuntary, (2) the prosecution failed to ensure that his rights were protected, (3) the trial court failed to exercise control of the proceedings at all times, (4) trial counsel sabotaged the proceedings and abandoned him, and (5) appellate counsel sabotaged the appeal and abandoned him. Respondent Dewayne Burton argues in an answer to the petition filed through counsel that the state courts reasonably rejected Petitioner's claims. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the petition will be denied.

## I.  Background

### A.  The Facts and Preliminary Proceedings

Petitioner was charged with two counts of felonious assault and two counts of witness intimidation.  The charges arose from an incident that occurred on May 25, 2010.

Barbara Carter testified at the preliminary examination in state district court that, on May 25, 2010, she and her daughter Shakeisha Carter went to the courthouse in Saginaw County, Michigan because Petitioner was scheduled for trial that day on a domestic violence charge involving Shakeisha.  When Shakeisha refused to go in the courtroom to testify against Petitioner, the matter was adjourned.  Shakeisha and Barbara then left the courthouse and proceeded to go home in Mrs. Carter's car.

On their way home, Shakeisha noticed Petitioner and said, "There he go[es]."  Barbara was driving at the time, and she subsequently saw Petitioner in her rear-view mirror.  Petitioner was driving a pick-up truck, which he rammed three times into the back of Mrs. Carter's car. Petitioner's actions caused Mrs. Carter's car to jump two curbs, hit a pole and a tree, and land in someone's yard.  The bumper came off her car, and the two front tires went flat.  Petitioner drove away after the collision.  (Prelim. Examination Tr. at 8-22, June 10, 2010.)

Shakeisha Carter refused to testify at the preliminary examination.   (*Id*. at 23-24.) However, a witness to the collision (Kaylee Groulx) corroborated Mrs. Carter's testimony, even though she was unable to identify the driver of the truck.  (*Id*. at 4-8).

Near the conclusion of Mrs. Carter's testimony, Petitioner's first attorney, Joseph H. Luplow ("Luplow"), moved to withdraw as counsel for Petitioner on the basis that he was with Petitioner when the felonious assaults and witness intimidation allegedly occurred.  The state district court denied the motion after Luplow admitted that the assaults occurred after the

2

scheduled court appearance where Luplow represented Petitioner and that he (Luplow) was not with Petitioner at that time. (*Id*. at 20.)  At a subsequent hearing, however, the state trial court permitted Luplow to withdraw as attorney for Petitioner on the basis that Luplow was an alibi witness for Petitioner.  (Hr'g Tr. at 3-5, July 15, 2010.)

The trial court then appointed William D. White ("White") to represent Petitioner.  On September 14, 2010, Petitioner complained at a court hearing that there was a breakdown in his relationship with White and that White was not representing him properly.  The trial court denied the motion on the basis that Petitioner had not shown good cause for substitution of counsel. (Hr'g Tr. at 3-13, Sept. 14, 2010.)

On April 5, 2011, the date set for trial, Petitioner stated that he did not want White representing him because White had called him a foul name.  White denied the accusation, but the trial court permitted him to withdraw as counsel for Petitioner.  The court then adjourned the trial and promised to appoint a different attorney for Petitioner.  (Hr'g Tr. at 3-10, Apr. 5, 2011.)

The trial court subsequently appointed William R. Cowdry ("Cowdry") to represent Petitioner.  On September 20, 2011, Petitioner rejected a plea offer and stated that he wanted to fire Cowdry, because he had been unaware that Cowdry was his attorney and because he did not feel safe going to trial with Cowdry.  The trial court stated that the matter had begun to look like a revolving door, but that the court would appoint one final attorney for Petitioner.  (Hr'g at 3-9, Sept. 20, 2011.)

The trial court subsequently appointed attorney Eldor R. Herrmann ("Herrmann") to represent Petitioner. At a hearing held on December 6, 2011, Petitioner stated that he wanted to fire Herrmann because he had not heard from Herrmann and because they had met for the first

time that day.  The trial court refused to remove Herrmann from the case, but moved the trial date to January 18, 2012.  (Hr'g Tr. at 3-9, Dec. 6, 2011.)

### B.  The Plea, Sentence, and Direct Appeal

On January 18, 2012, Petitioner pleaded no contest in Saginaw County Circuit Court to two counts of witness intimidation and two counts of felonious assault.  There was no plea bargain, but the trial court agreed to sentence Petitioner to the middle of the sentencing guidelines and to make the sentence run concurrently with the sentence that Petitioner was serving in another case.  (Plea Tr. at 22, Jan. 18, 2012.)

Petitioner subsequently moved to withdraw his plea on the basis that his plea was involuntary.  The trial court denied Petitioner's motion and then sentenced Petitioner to imprisonment for 150 months (twelve and a half years) to twenty-five years for each of the witness-intimidation convictions.  The court sentenced Petitioner to a concurrent term of 120 months (ten years) to fifteen years for each of the felonious-assault convictions.  (Sentencing Tr. at 3-7, Feb. 28, 2012.)

On appeal, Petitioner argued that the trial court abused its discretion when it denied his motion to withdraw his plea. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."  *People v. Henix*, No. 312957 (Mich. Ct. App. Nov. 20, 2012). On May 28, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue.  *See People v. Henix*, 494 Mich. 855; 830 N.W.2d 405 (2013) (table).

C.  **The Initial Habeas Petition, Post-Conviction Proceedings in State Court, and Amended Habeas Petition**

On September 10, 2013, Petitioner filed his first petition for the writ of habeas corpus and a motion to hold the petition in abeyance while he pursued additional state remedies.  (Dkt. 1 and 4).  His sole habeas claim was that the state trial court abused its discretion when it denied his motion to withdraw his no-contest plea.  On October 24, 2013, the Court granted Petitioner's motion for a stay and closed this case for administrative purposes.  (Dkt. 6).

Petitioner then filed a motion for relief from judgment in the state trial court.  He alleged that (1) the prosecution failed to ensure that his rights were protected, (2) the trial court failed to control the proceedings at all times, (3) trial counsel sabotaged the criminal proceedings and then abandoned him, and (4) appellate counsel sabotaged his appeal and then abandoned him.  The state trial court denied Petitioner's motion on the basis that Petitioner had failed to meet his burden of showing entitlement to relief under Michigan Court Rule 6.508(D).   The court also noted that Petitioner had understood the terms of the plea agreement and entered his plea knowingly and understandingly.  *See* Opinion & Order, No. 10-34370-FH-3 (Saginaw Cty. Cir. Ct., Jan. 16, 2014).  Petitioner appealed the trial court's decision, but both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure to meet the burden of establishing entitlement to relief under Rule 6.508(D).  *See People v. Henix*, No. 320656 (Mich. Ct. App. June 27, 2014); *People v. Henix*, 497 Mich. 953; 858 N.W.2d 55 (2015) (table).

On February 24, 2015, Petitioner filed an amended *pro se* petition for the writ of habeas corpus (Dkt. 8) and a motion to re-open this case (Dkt. 7).  The Court granted the motion to re-open this case (Dkt. 9), and on December 18, 2015, the State filed an answer to the petition (Dkt. 11).  The case is now ready for an adjudication of Petitioner's claims.

## II.  Standard of Review

A federal habeas court may grant relief only if the state court's adjudication of the petitioner's claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

On direct appeal, the Michigan Court of Appeals denied Petitioner's first claim (involuntary plea) "for lack of merit in the grounds presented," *Henix*, No. 312957 (Mich. Ct. App. Nov. 20, 2012), and the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue.  These brief orders were decisions on the merits.  *Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012).

Petitioner presented habeas claims two through five in his post-conviction motion and on appeal from the trial court's decision on his motion.  All three state courts denied relief under Michigan Court Rule 6.508(D) for failure to carry the burden of establishing entitlement to relief. "Rule 6.508(D) has both a procedural and a substantive component, and demonstrates that citations to a defendant's failure to meet the burden of establishing entitlement to relief can refer to a defendant's failure to meet that burden on the merits."  *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

None of the state courts in this case applied the procedural-default rule set forth in Rule 6.508(D)(3) when they addressed Petitioner's second, third, fourth, and fifth claims.  Instead, they simply cited Rule 6.508(D) and stated that Petitioner had failed to establish entitlement to

relief.  Additionally, the trial court determined in its order denying Petitioner's post-conviction motion that Petitioner entered his plea knowingly and understandingly.  The Court therefore presumes, in the absence of any indication or state-law procedural principles to the contrary, that the state courts adjudicated habeas claims two through five on the merits.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011); *Werth,* 692 F.3d at 493.  Thus, the deference due to state-court decisions under § 2254(d) applies here.  To obtain the writ of habeas corpus, Petitioner must show that the state courts' rulings on his claims were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

## III.  Discussion

### A.  Denial of the Motion to Withdraw the Plea

Petitioner alleges first that the trial court abused its discretion when it denied his motion to withdraw his plea.  Petitioner contends that his no-contest plea was not voluntary under Michigan Court Rule 6.302(C) because his trial attorney told him that (1) the attorney did not intend to investigate the case if he believed Petitioner was guilty and (2) Petitioner would receive a sentence of no more than ten years in prison.

The contention that the trial court violated Michigan Court Rule 6.302(C) is not a cognizable claim on habeas review because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Furthermore, a defendant has no absolute right to withdraw a guilty or no-contest plea. *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012); *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005). Unless a plea violated a clearly-established constitutional right, the decision whether to allow a defendant to withdraw a no-contest plea is discretionary with the state trial court. *Shanks*, 387 F. Supp. 2d at 748.

Nevertheless, "[a] guilty or no-contest plea involves a waiver of many substantial constitutional rights, *see Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and a court may accept a guilty or no-contest plea only where it is a 'voluntary[,] . . . knowing, intelligent act [ ] done with sufficient awareness of the relevant circumstances and likely consequences.' " *Fautenberry v. Mitchell*, 515 F.3d 614, 636-37 (6th Cir. 2008) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The Court therefore must determine whether Petitioner's no-contest plea was involuntary and whether the trial court violated Petitioner's constitutional rights when the court declined to permit Petitioner to withdraw his plea.

Courts must consider all the relevant circumstances when determining whether a plea was voluntary. *Brady*, 397 U.S. at 749. Among the factors to be considered are whether the defendant appreciated the consequences of his waiver of constitutional rights, waived his rights without being coerced to do so, and understood the rights that he was surrendering by pleading guilty or no contest. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009). Additional factors to be considered are whether the defendant understood the essential elements of the offenses to which he was pleading guilty or no contest and whether he was aware of the maximum sentence for his crimes. *Id*. at 408-09.

Petitioner indicated at the plea proceeding that he understood the consequences of his plea and the rights that he was waiving by pleading no contest.  He also claimed to understand the nature of the charges and the maximum sentence for both offenses.  He stated that no one had threatened him to make him plead no contest and that it was his choice to plead no contest.  (Plea Tr. at 21-25, Jan. 18, 2012.)

Although Petitioner alleges that his plea attorney (Herrmann) informed him that he did not intend to investigate the case if he believed Petitioner was guilty, Herrmann denied this allegation when Petitioner raised the issue at sentencing.  Herrmann stated that (1) it was not his responsibility to decide whether a person was guilty or innocent and (2) it would have been to his advantage to go to trial because he would have received more money by going to trial than by representing Petitioner at a plea.  (Sentencing Tr. at 4-5, Feb. 28, 2012.)

The trial court considered Herrmann's statements and appears to have found his statements more credible than Petitioner's allegations.  The court noted that Herrmann had denied Petitioner's allegations and that Petitioner's allegations about Herrmann did not make sense.  (*Id*. at 7.)  The "trial court's credibility determinations are entitled to considerable deference."  *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).  And because the trial court apparently found Herrmann more credible than Petitioner, this Court rejects Petitioner's contention that Herrmann did not intend to investigate Petitioner's case.

Petitioner also claims that his attorney said he would receive a sentence of no more than ten years in prison if he pleaded no contest.  Herrmann did admit to telling Petitioner initially that "the deal was 10 years," but he subsequently corrected himself and told Petitioner that the sentence was 150 months or a little more than ten years.  (Sentencing Tr. at 5, Feb. 28, 2012.)

The trial court, moreover, pointed out to Petitioner over a month before his plea and also at the plea proceeding that Petitioner would receive a sentence of 150 months or thirty months more than ten years.  (Hr'g Tr. at 4, Dec. 6, 2011; Plea Tr. at 23, Jan. 18, 2012.)  "[T]he state trial court's proper colloquy can be said to have cured any misunderstanding [Petitioner] may have had about the consequences of his plea."  *Ramos*, 170 F.3d at 565.

The Court concludes for the reasons given above that Petitioner's no-contest plea was voluntary and that the trial court did not abuse its discretion in denying Petitioner's motion to withdraw his plea.  Further, the state appellate court's conclusion that Petitioner's claim lacked merit was not contrary to, or an unreasonable application of, Supreme Court precedent.  Petitioner has no right to relief on the basis of his first claim.

## B.  The Prosecution

Petitioner claims next that the prosecution violated his right to due process and failed to ensure that his rights were protected.  In support of this claim, Petitioner relies on Shakeisha Carter's affidavit in which she states that she did not recognize the driver of the truck that hit her mother's car on May 25, 2010.  Shakeisha also states in her affidavit that she was locked up for thirty days because she refused to take the stand and lie about Petitioner and that she did not want to press charges against Petitioner or go forward with the proceedings.  *See* Affidavit of Shakeisha Carter*, Dkt. 12-11, Pg ID 275.  Petitioner asserts that Shakeisha's affidavit is supported by Luplow's statement on the record that Petitioner was with him when Petitioner supposedly ran Shakeisha and her mother off the road.  (Hr'g Tr. at 3, July 15, 2010.)

Petitioner's claim essentially challenges the factual basis for the charges against him.  He waived his challenge to the legitimacy of the charges when he pleaded no contest on January 18, 2012.  As explained in *Tollett v. Henderson*, 411 U.S. 258 (1973),

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [within the range of competence demanded of attorneys in criminal cases].

*Id*. at 267.  Stated differently,

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.  Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).  Petitioner was represented by counsel at his plea, and the record indicates that his plea was voluntary and knowing.  By pleading no contest, he waived his right to challenge the factual basis for, or legitimacy of, the charges against him.

Furthermore, while it is true that a prosecutor must have "probable cause to believe that the accused committed an offense defined by statute," *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), Barbara Carter's testimony at the preliminary examination supported the charges against Petitioner.  And her testimony was corroborated in part by Kaylee Groulx who witnessed the collision.  Therefore, the prosecutor did not violate Petitioner's constitutional right to due process, and Petitioner has no right to relief on the basis of his second claim.

### C. The Trial Court

In his third claim, Petitioner alleges that the trial court failed to exercise control of the proceedings at all times and yielded control of the proceedings to the prosecutor. According to Petitioner, the prosecutor proceeded with the case despite attorney Luplow's comments on the record in state court that he had become an alibi witness for Petitioner and despite Doris Driane's affidavit stating that she was with Petitioner and Luplow on May 25, 2010. Petitioner asserts that the trial court's lack of control resulted in a fundamentally unfair proceeding in which an innocent man was sent to prison.

Trial judges are not mere moderators of court proceedings; they must also govern proceedings for the purpose of assuring proper conduct and determining questions of law. *Quercia v. United States*, 289 U.S. 466, 469 (1933). "If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Geders v. United States*, 425 U.S. 80, 87 (1976).

The record before the Court belies Petitioner's allegations that the trial court yielded control of the proceedings to the prosecutor. Throughout the proceedings, the trial court listened to Petitioner's complaints, addressed his concerns, exhibited patience and respect for Petitioner, and ensured that Petitioner's rights were protected. The trial court also appointed four different attorneys for Petitioner at his request.

Although Petitioner insinuates that he is innocent of the prosecutor's charges and that his mother (Doris Driane) and his first attorney (Luplow) supported an alibi defense, the trial court permitted Luplow to withdraw from the case so that he could be an alibi witness for Petitioner. Furthermore, the charges against Petitioner were supported by probable cause. As such, the

prosecutor's "decision whether or not to prosecute, and what charge[s] to file . . . generally rest[ed] entirely in his discretion." *Hayes*, 434 U.S. at 364.  And because there is no evidence that the prosecutor's decision was based on "an unjustifiable standard such as race, religion, or other arbitrary classification," *Oyler v. Boles*, 368 U.S. 448, 456 (1962), there was no basis for the trial court to question the charges or the prosecutor's decision to proceed with the case. Petitioner's claim about the trial court lacks merit and does not entitle him to relief.

### D.  Trial Counsel

In his fourth claim, Petitioner alleges that his attorney sabotaged the criminal proceedings and then abandoned him.  More specifically, Petitioner contends that, although Luplow stated on the record that he was an alibi witness for Petitioner, Luplow did nothing further to advance that defense.  According to Petitioner, Luplow did not file a notice of alibi, he did not solicit the supporting testimony of Doris Driane, he did not ask the prosecution to drop the charges, and he did not file a motion to dismiss the case.  Petitioner asserts that counsel's omissions resulted in a structural error, which mandates his immediate release from custody.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In the context of a guilty or no-contest plea, a deficient performance is one that falls below an objective standard of reasonableness or is outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).

The "prejudice" prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. at 59.  In other words, the defendant

must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial.  *Id.*  "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment.' "  *Burt v. Titlow*, 134 S.Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690).

Luplow, Petitioner's first attorney, withdrew from the case on the basis that Petitioner was with him during the time Petitioner supposedly was ramming his truck into Barbara Carter's car.  (Hr'g Tr. at 3-4, July 15, 2010.) Although Luplow apparently did not file a notice of alibi, Petitioner's second attorney claimed that he filed a notice of alibi with Luplow's name on it. (Hr'g Tr. at 3, Sept. 14, 2010.)  In addition, Petitioner's fourth attorney claimed on the day set for trial that Luplow was the defense witness.  (Plea Tr. at 13, Jan. 18, 2012.)  Thus, there is no support in the record for Petitioner's claim that his attorneys did not pursue an alibi defense or that they sabotaged the proceedings and abandoned him.  Furthermore, a motion to dismiss the charges in all likelihood would have been denied because there was probable cause to support the charges.

As for attorney Herrmann's recommendation that Petitioner plead no contest, this was objectively reasonable advice.  If Petitioner had gone to trial and been convicted, his sentences could have run consecutively to the sentence that he was already serving (*id.* at 4), and the prosecutor indicated that she intended to request consecutive sentences if Petitioner went to trial and was convicted (*id.* at 18).  The evidence against Petitioner was substantial, and, by pleading no contest, Petitioner was able to take advantage of the trial court's promise to sentence him in

14

the middle of the sentencing guidelines and to make his sentences run concurrently with the sentence that he was serving.  (*Id*. at 22.)

The court concludes that defense counsel's performance was not deficient and that the alleged deficiencies did not prejudice the defense.  Therefore, Petitioner's attorneys were not constitutionally ineffective.

### E.  Appellate Counsel

In his fifth and final claim, Petitioner alleges that his appellate attorney did not offer to assist him and failed to raise all his claims on direct appeal.  Petitioner asserts that he was stuck with an attorney that he did not want and who did not want to represent him.

An appellate attorney is not required to raise every non-frivolous claim requested by his or her client if counsel decides, as a matter of professional judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  To demonstrate that appellate counsel was ineffective, a habeas petitioner must show (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) a reasonable probability that he would have prevailed on appeal if his attorney had raised the issues.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

Appellate counsel raised Petitioner's first claim on direct appeal, and Petitioner's remaining claims lack merit for the reasons given above.  Therefore, appellate counsel was not ineffective.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## IV.  Conclusion

Petitioner's claims lack merit, and the state courts' rejection of the claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts.  The state-court decisions clearly were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  The Court therefore denies the amended petition for writ of habeas corpus.

## V. Denying a Certificate of Appealability;
## Granting Leave to Proceed *In Forma Pauperis* on Appeal

Before Petitioner may appeal this Court's decision, a district or circuit judge must issue a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003).

Reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision, because he was granted *in forma pauperis* status in this Court, and an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3);

Fed. R. App. P. 24(a)(3)(A).

Dated:  January 18, 2017                          s/ Sean F. Cox
                                                  Sean F. Cox
                                                  United States District Judge


I hereby certify that on January 18, 2017, the document above was served on counsel of record via electronic means and upon William Henix via First Class Mail at the address below:

WILLIAM HENIX 263968
RICHARD A. HANDLON CORRECTIONAL FACILITY
1728 BLUEWATER HIGHWAY
IONIA, MI 48846

                                                  s/ J. McCoy
                                                  Case Manager